1  McGREGOR W. SCOTT
   United States Attorney
2  R. STEVEN LAPHAM
   Assistant U.S. Attorney
3  501 I Street, Suite 10-100
   Sacramento, California  95814
4  Telephone: (916) 554-2724

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                   FOR THE EASTERN DISTRICT OF CALIFORNIA

9
   UNITED STATES OF AMERICA,         )
10                                    )      CR. No. S-05-083 EJG
                   Plaintiff,         )
11                                    )      PLEA AGREEMENT
              v.                      )
12                                    )
   RYAN DANIEL LEWIS,                 )      DATE:    October 14, 2005
13                                    )      TIME:    9:30 a.m.
                   Defendant.         )      COURT:   Courtroom 2
14 _____)

15

16      Pursuant to Rule 11(c) of the Federal Rules of Criminal

17 Procedure, the United States and the defendant, Ryan Daniel Lewis,

18 through his counsel, agree as follows:

19                                  I.

20                            INTRODUCTION

21      **A.  Scope of Agreement:**  This document contains the complete

22 Plea Agreement between the United States Attorney's Office for the

23 Eastern District of California (the "government") and the defendant

24 regarding this case.  This Plea Agreement is limited to the United

25 States Attorney's Office for the Eastern District of California and

26 cannot bind any other federal, state, or local prosecuting,

27 administrative, or regulatory authorities.

28 ////

                                    1

1    **B.  Court Not a Party:**  The Court is not a party to this Plea
2  Agreement.  Sentencing is a matter solely within the discretion of
3  the Court, the Court is under no obligation to accept any
4  recommendations made by the government, and the Court may in its
5  discretion impose any sentence it deems appropriate up to and
6  including the statutory maximum stated in this Plea Agreement.  If
7  the Court should impose any sentence up to the maximum established
8  by the statute, the defendant cannot, for that reason alone,
9  withdraw his guilty plea, and he will remain bound to fulfill all of
10  the obligations under this Agreement.  The defendant understands
11  that neither the prosecutor, defense counsel, nor the Court can make
12  a binding prediction or promise regarding the sentence will receive.
13                                  **II.**
14                  **NATURE AND ELEMENTS OF CHARGES.**

15    **A.  Acknowledgment of Charges:**     The defendant acknowledges
16  that he has been charged by Superceding Indictment with five counts
17  of arson of a building in or affecting interstate commerce in
18  violation of 18 U.S.C. §844(i), three counts of attempted arson of a
19  building in or affecting interstate commerce in violation of 18
20  U.S.C. §844(i), and one count of conspiracy to commit arson in
21  violation of 18 U.S.C. § 844(n).

22    **B.  Explanation and Understanding of Charge:**  Defendant has
23  read the charges against him and those charges have been explained
24  to him by his attorney.  Defendant fully understands the nature and
25  elements of the crime charged and what the government would be
26  required to show in order to obtain a conviction.

27  ////
28  ////

2

**III.**

**DEFENDANT'S OBLIGATIONS**

**A.   Guilty Pleas:**   The defendant will plead guilty to Counts Two, Four and Five of the Superceding Indictment, agrees that he is in fact guilty of those charges and that the facts set forth in the Factual Basis attached hereto as Exhibit A are accurate.

**B.   Elements of the Offense:**   The defendant understands that to be convicted of the crime to which he is pleading guilty the government would have to show beyond a reasonable doubt each of the following elements:

(1) That on or about the dates set forth in the superceding indictment, the defendant intentionally damaged or destroyed, or attempted to damage or destroy, a building by means of fire;

(2) That the building which was damaged or destroyed, or which was the subject of the defendant's attempt, was used in interstate commerce or in an activity affecting interstate commerce; and

(3) That the defendant acted maliciously; that is, that he acted intentionally without just cause or excuse.

**C.   Restitution:**   By signing this Agreement, the defendant also agrees that the Court must order the payment of restitution for the full loss, if any, caused by the defendant's wrongful conduct.

**D.   Special Assessment:**   The defendant agrees to pay a special assessment of $300 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing.

////

3

**IV.**

**THE GOVERNMENT'S OBLIGATIONS**

**A.   No further charges:**  The government agrees to move at the time of judgment and sentencing to dismiss the remaining charges against the defendant.  The government also agrees to bring no further charges arising out of the facts set forth in Exhibit A.

**B.   Recommendations:**   The government will recommend a sentence of 72 months.

**V.**

**MAXIMUM SENTENCE**

**A.   Maximum Penalty:**  The maximum sentence which the Court can impose on each of the three charges to which the defendant is pleading guilty is 20 years of incarceration, a 3 year period of supervised release, a fine of $250,000, and a special assessment of $100.  By signing this Agreement, the defendant acknowledges that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct.  The defendant further agrees that he will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

**B.   Minimum Sentence:** The minimum term of imprisonment which the court may impose on each of the three charges to which the defendant is pleading guilty is 5 years.

**C. Violations of Supervised Release:** The defendant understands and agrees that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to two additional years imprisonment.

////

4

1

**VI.**

2

**SENTENCING DETERMINATION**

3      **A.   Statutory Authority:**  The defendant understands that the
4  Court must consult the Federal Sentencing Guidelines (as promulgated
5  by the Sentencing Commission pursuant to the Sentencing Reform Act
6  of 1984, 18 U.S.C. §§ 3551-3742 and 28 U.S.C. §§ 991-998, and as
7  modified by United States v. Booker and United States v. Fanfan,
8  __ U.S. __, 125 S.Ct. 738 (2005)) and must take them into account
9  when determining a final sentence.  Defendant understands that the
10 Court will determine a non-binding and advisory guideline sentencing
11 range for this case pursuant to the Sentencing Guidelines.
12 Defendant further understands that the Court will consider whether
13 there is a basis for departure from the guideline sentencing range
14 (either above or below the guideline sentencing range) because there
15 exists an aggravating or mitigating circumstance of a kind, or to a
16 degree, not adequately taken into consideration by the Sentencing
17 Commission in formulating the Guidelines.  Defendant further
18 understands that the Court, after consultation and consideration of
19 the Sentencing Guidelines, must impose a sentence that is reasonable
20 in light of the factors set forth in 18 U.S.C. § 3553(a).

21      **B.   Stipulations Affecting Guidelines Calculation:** The
22 government and the defendant agree that there is no material dispute
23 as to the following sentencing guideline variables and therefore
24 stipulate to the following:

25           **1.   Base Offense Level:** Pursuant to USSG §2K1.4(a)(1), the
26      base offense level for Count 5 is 24; the base offense level
27      for Counts 2 and 4 is 20.

28           **2.   Specific Offense Characteristics:**   None.

5

1    **3. Victim-related Adjustments:** None, however, the
2    government reserves its right to seek an upward departure based
3    on Application Note 4 to USSG § 3A1.4 (Terrorism).

4    **4. Role in the Offense Adjustment:** None for Count 5.
5    With respect to Counts 2 and 4, the base offense level should
6    be increased by two levels pursuant to USSAG § 3B1.1(c).

7    **5. Obstruction Adjustment:** None.

8    **6. Adjusted Offense Level:** The adjusted offense level for
9    Count 5 is 24. The adjusted offense level for Count 2 is 22.
10   The adjusted offense level for Count 4 is 22.

11   **7. Adjustment for Multiple Counts:** Pursuant to USSG §
12   3D1.4, the adjusted offense level should be increased by 3
13   levels, making the defendant's overall offense level 27.

14   **8. Decrease for Acceptance of Responsibility:** 3

15   **9. Criminal History:** The parties agree that the defendant
16   has a Criminal History Category of I.

17   **10. Resulting Guideline Range:** 51-63 months. Due to the
18   mandatory minimum sentence in this case, pursuant to USSG §
19   5G1.1, the effective guideline range is 60-63 months.

20                                  **VII.**

21                                 **WAIVERS**

22   **A. Waiver of Constitutional Rights:** The defendant understands
23   that by pleading guilty he is waiving the following constitutional
24   rights:

25   **1. Public and Speedy Trial:** If defendant were to plead
26   not guilty to the charges in the indictment, he would be entitled to
27   a public and speedy trial.

28   ////

                                    6

1          **2.   Jury Trial, Presumption of Innocence, Unanimous**
2  **Verdict:**   The defendant has an absolute right to a jury trial.   At
3  that trial, the jury would be instructed that the defendant is
4  presumed innocent and that he carries that presumption throughout
5  the trial until such time as the government overcomes the
6  presumption by evidence adduced at the trial.   The jury would be
7  further instructed that it could not convict the defendant unless
8  all twelve jurors agreed that the government had proved guilt beyond
9  a reasonable doubt.

10         **3.   Confrontation of Witnesses:**   At the trial, the
11  defendant would be entitled to see, hear and confront the witnesses
12  and the evidence against him.   These witnesses would be testifying
13  under the penalty of perjury and would be subject to cross-
14  examination by the defendant's attorney.

15         **4.   Compulsory Process:**   At the trial, the defendant would
16  be entitled to present witnesses and other evidence in his own
17  behalf and, if the witnesses refused to appear voluntarily, the
18  defendant would be entitled to use the court's process to compel
19  their attendance.

20         **5.   Privilege Against Self Incrimination:**   At a trial, the
21  defendant would have a privilege against self-incrimination so that
22  he could not be compelled to testify and the jury could be
23  instructed that no inference of guilt could be drawn from the
24  defendant's failure to testify.

25         **6.   Right to Appeal:**   If, after a trial, the defendant
26  were convicted, he would have a right to appeal the conviction.

27         **7.   Representation of Counsel:**   The defendant is entitled
28  to be represented by competent counsel through all stages of the

7

1 | case, including appeal, and if the defendant could not afford an
2 | attorney one would be appointed for him by the court.

3 |      Defendant understands that by pleading guilty he is waiving
4 | all of the rights set forth above.  Defendant's attorney has
5 | explained those rights to him and the consequences of his waiver of
6 | those rights and the defendant freely and voluntarily consents to
7 | said waiver.

8 | **B.  Waiver of Appeal Rights and Collateral Attack:**  The
9 | defendant agrees to waive all rights to appeal this plea and
10 | sentence and to attack collaterally this plea and sentence whether
11 | by way of a motion pursuant to 28 U.S.C. § 2255 or otherwise,
12 | provided he is sentenced in accordance with the parties'
13 | stipulations.

14 |     If the defendant's conviction on any of the counts to which he
15 | is pleading is ever vacated at the defendant's request, or his
16 | sentence is ever reduced at his request, the government shall have
17 | the right (1) to prosecute the defendant on any of the counts to
18 | which he pleaded guilty; (2) to reinstate any counts that may be
19 | dismissed pursuant to this agreement; and (3) to file any new
20 | charges that would otherwise be barred by this agreement.  The
21 | decision to pursue any or all of these options is solely in the
22 | discretion of the United States Attorney's Office.  By signing this
23 | agreement, the defendant agrees to waive any objections, motions,
24 | and defenses he might have to the government's decision.  In
25 | particular, he agrees not to raise any objections based on the
26 | passage of time with respect to such counts including, but not
27 | limited to, any statutes of limitation or any objections based on
28 | the Speedy Trial Act or the Speedy Trial Clause of the Sixth

8

1 | Amendment.

2 |         **C. Waiver of Attorneys' Fees and Costs:** The defendant
3 | agrees to waive rights under the "Hyde Amendment," Section 617, P.L.
4 | 105-119 (Nov. 26, 1997), to recover attorneys fees or other
5 | litigation expenses in connection with the investigation and
6 | prosecution of all charges in the above-captioned matter and of any
7 | related allegations (including without limitation any charges to be
8 | dismissed pursuant to this Agreement and any charges previously
9 | dismissed).

10 | **VIII.**

11 | **APPROVALS AND SIGNATURES**

12 |     **A. Defense Counsel:** I have read this Plea Agreement and have
13 | discussed it fully with my client. The Plea Agreement accurately
14 | and completely sets forth the entirety of the agreement. I concur
15 | in my client's decision to plead guilty as set forth in this
16 | Agreement.

17 | DATED: Oct. 13, 2005

TIMOTHY L. ZINDEL
Assistant Federal Defender
Counsel for Defendant

20 |     **B. Defendant:** I have read this Plea Agreement and carefully
21 | reviewed every part of it with my attorney. I understand it, and I
22 | voluntarily agree to it. Further, I have consulted with my attorney
23 | and fully understand my rights with respect to the provisions of the
24 | Sentencing Guidelines which may apply to my case. No other promises
25 | or inducements have been made to me, other than those contained in
26 | this Agreement. In addition, no one has threatened or forced me in
27 | ////
28 | ////

9

1  any way to enter into this Plea Agreement.  Finally, I am satisfied

2  with the representation of my attorney in this case.

3

4  DATED:   Oct 13 2005                    _____
                                           RYAN DANIEL LEWIS
5                                          Defendant

6

7      **C.   Attorney for United States:**

8          I accept and agree to this Plea Agreement on behalf of the

9  government.

10  DATED:   Oct. 14, 2005

11                                 McGREGOR W. SCOTT
                                   United States Attorney
12

13                          By: _____
14                              R. STEVEN LAPHAM
                                Assistant U.S. Attorney
15

16

17

18

19

20

21

22

23

24

25

26

27

28

10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT "A"**

**Factual Basis for Plea**

Count 2

On December 25, 2004, the defendant recruited three other individuals, Eva Holland, Lili Holland, and Jeremiah Colcleasure, to accompany him to the Twelve Bridges housing development in Lincoln, California, for the purpose of placing incendiary devices in two homes then under construction on Flores Court.  The targeted homes were being built by JTS Homes and were intended for resale in the retail housing market.

The components for the incendiary devices had previously been constructed by the defendant and placed by the defendant in the back of his car.  In the early morning hours of December 25, the defendant drove his car containing the incendiary devices and the three accomplices to the Twelve Bridges development.  After arriving at Flores Court, the defendant, with the assistance of others, placed the devices in two of the homes and rigged them to function. The incendiary devices did not function properly but were capable of causing extensive fire damage to the structures if they had successfully functioned.

Before leaving, the defendants spray painted graffiti on one of the homes including, "Enjoy the world as is - as long as you can", "U will pay", "Evasion", "4 Q" and "Leave".  This home also sustained broken windows.  The letters "ELF" were painted in the cul-de-sac where these homes were located.  ELF is a reference to the Earth Liberation Front, which is recognized by the FBI as being an eco-terrorist group.  A major concern of ELF is suburban real estate development.

Count 4

On January 12, 2005, the defendant placed five incendiary devices in a commercial building under construction in Auburn, California that, upon completion, were to be rented as doctor's offices.  The devices were found at 440 Auburn Folsom Road, which is part of the Parkhill Professional Center.  The incendiary devices found at the Auburn site are similar to the devices which the defendant placed at the Twelve Bridges construction site.  The defendant was driven to the crime scene by Eva Holland, who waited in the car while the defendant arranged the devices, and then drove the defendant away from the scene.

Emma Goldman Letter

On January 15, 2005, a letter claiming responsibility for "the actions taken in Placer County (CA)" was received by several media outlets including the  Auburn Journal, Roseville Press Tribune, Lincoln Ledger, and Sacramento Bee.  The letter mentions the "homes in JTS Communities Twelve Bridges housing development in the city of Lincoln and the Park Hill Office buildings under construction, in

1

1 the city of Auburn," both located in Placer County and generally
  decries various aspects of modern life, including real-estate
2 development, and promises that "there will be at least one or more
  actions every few weeks." The letter concludes, "With sincere love,
3 'Agent Emma Goldman and the Crimethinc Senior Officers of the Earth
  Liberation Front'". This letter was prepared and mailed by the
4 defendant.

5 Count 5 (Sutter Creek):

6     On February 7, 2005, the defendant placed seven incendiary
  devices in five buildings of the Pinewoods Apartment Homes complex,
7 located at 1 Pinewoods Lane, Sutter Creek, CA. These buildings were
  either completed or in the final stages of construction. Some of
8 the renters were scheduled to move in that same day. An apartment
  manager was already occupying one of the targeted buildings,
9 although there is no evidence to indicate that the defendant was
  aware of that fact. Graffiti found at the site included "ELF" and
10 "We will win" in red paint. Upon activation of the fire alarms at
   the apartment complex, the apartment manager contacted the Sutter
11 Creek Fire Department. Sprinkler systems installed in the Buildings
   extinguished six of the seven devices. The fire caused by one
12 device was extinguished by the fire department.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28